**Federal Defenders**
OF NEW YORK, INC.

Southern District
81 Main Street, Suite 300
White Plains, N.Y. 10601-4150
Tel: (914) 428-7124  Fax: (914) 948-5109

David E. Patton
*Executive Director
and Attorney-in-Chief*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

June 22, 2023

<u>Via Email and ECF</u>

The Honorable Cathy Seibel
United States District Court Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

      Re:    United States v. Gregory Draine
              22 Cr. 428

Dear Honorable Seibel:

    Gregory Draine (herein "Mr. Draine") is devoted to his family. Even while incarcerated, Mr. Draine has strived to support his loved ones and, because of this, he has their support. Of course, Mr. Draine understands that he must be punished for recklessly firing a gun. But in light of his sympathetic past, and the fact that nobody was injured, a sentence of forty-eight months is more than sufficient.

***Mr. Draine's Childhood***

    Gregory Draine was born in 1977 in Yonkers, New York. PSR ¶ 59. He grew up in Yonkers and was raised by both parents until, at roughly nine years old, Mr. Draine's parents separated. *Id.* ¶ 61.[1] Mr. Draine was raised by his father in a high crime and gang infested neighborhood. *Id.* Mr. Draine's father worked a lot, so Mr. Draine spent a lot of time alone and with his older sister. *Id.* ¶ 62. While he was living with his father, Mr. Draine was able to maintain a close relationship with his mother. *Id.* ¶¶ 61, 66.

---

[1] While Mr. Draine reported to Probation that he did not know why his parents separated, *Id.* ¶ 61, his mother explains that "there were some issues of domestic violence going on at home. Gregory's father had a bad temper and when he became upset, he would take his frustrations out on me. . . . These were things I tried to hide from my children, but I was not good at it. Gregory was exposed to a lot of trauma at a young age".). Exhibit A, Tina Draine Letter.

The Honorable Cathy Seibel                                                    Page **2** of **8**
United States v. Gregory Draine (22 Cr. 428)                    Sentencing Submission (June 22, 2023)

As a child, Mr. Draine played a lot of basketball and his basic needs were met. *Id.* ¶¶ 62, 64. But Mr. Draine began experimenting with alcohol and marijuana when he was only twelve and thirteen, which quickly became a daily habit. *Id.* ¶ 74-75. Education was not prioritized, and Mr. Draine was allowed to drop out when he was in the 10th Grade. *Id.* ¶ 77. Not long thereafter, Mr. Draine – then seventeen years old – was arrested for participating in a robbery with two other individuals. *Id.* ¶ 36. Over the course of the next few years, when Mr. Draine was between eighteen and twenty-one years old, Mr. Draine was arrested on ten separate occasions. *Id.* ¶¶ 37-45. Most of these were misdemeanors that were prosecuted in Yonkers City Court, but Mr. Draine was also convicted of abduction, extortion, assault and theft related offenses in Virginia Beach, Virginia. *Id.* As a result of these Virginia convictions, Mr. Draine was incarcerated from 1998 through late 2016.[2] Following his release in 2016, Mr. Draine moved to New York, where he was temporarily supervised through the Interstate Compact.[3] While Mr. Draine's sentence from Virginia called for him to be supervised for years to come, his supervision was terminated on January 31, 2020. *See* Exhibit B, January 31, 2020 Letter from Department of Corrections Community Corrections Adult Probation and Parole, District 23.

***The Offense and Acceptance of Responsibility***

On November 5, 2021, Mr. Draine was in Yonkers, New York. PSR ¶¶ 8, 11. Mr. Draine and another individual got into a verbal argument and that individual was observed with a baseball bat yelling at Mr. Draine as he walked towards Mr. Draine, who was driving a friend's car. *Id.* ¶ 10. Mr. Draine stopped the

---

[2] The PSR states that Mr. Draine was released from prison in Virginia in 2020. PSR ¶ 43. This is incorrect. Mr. Draine was released in late 2016.

[3] New York will supervise parolees from other states pursuant to section 259-mm of New York Executive Law. Information about this program is available online at: https://doccs.ny.gov/interstate-compact.

Case 7:22-cr-00428-CS   Document 43   Filed 06/22/23   Page 3 of 8

The Honorable Cathy Seibel                                                Page **3** of **8**
United States v. Gregory Draine (22 Cr. 428)           Sentencing Submission (June 22, 2023)

automobile, retrieved a shotgun from the car's trunk, and fired it towards a nearby house, hitting a porch light.  *Id.* ¶¶ 11-12, 17-18.[4]

Mr. Draine pleaded guilty on March 7, 2023.  *Id.* ¶ 3.  While he was arrested, presented and detained on these charges on November 22, 2021, Mr. Draine was produced pursuant to a writ from the Bridgeport Correctional Center, so he has been in primary state jurisdiction through the entire pendency of this case.  *Id.* P. 1.

*Guidelines*

According to Probation and as agreed upon by the plea agreement, Mr. Draine's advisory guidelines call for a sentence of between 57 and 71 months based on an offense level of 23 and a criminal history score of 5 (Category III).  *Id.* ¶¶ 21-48, P. 24.

### *The Most Appropriate Sentence:  Forty-Eight Months*

As Your Honor is well aware, in selecting a sentence this Court takes as its "lodestar the parsimony clause of 18 U.S.C. § 3553(a)." *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013). That provision directs sentencing courts to "'impose a sentence sufficient, but not greater than necessary, to comply with' the factors set out in 18 U.S.C. § 3553(a)(2)," i.e., "proportionality, deterrence, incapacitation, and rehabilitation." *Id*. In *United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006), the Second Circuit explained that if the Court believes a lower sentence will be as effective as a higher sentence in serving the purposes of sentencing, **it must choose the lower sentence**. *See id*. at 142 (observing that where a guidelines sentence is "in equipoise with [a] below-the-range sentence," the parsimony clause requires imposition of the lower sentence).

In this case, a sentence of forty-eight months is more than sufficient.  While Mr. Draine should not have possessed or fired a gun, nobody was injured and his

---

[4] Mr. Draine is adamant that he was not aiming the gun at any individual, and the parties are in agreement that his conduct constituted reckless endangerment.  PSR ¶¶ 4(e), 26.  It is undisputed that the gun Mr. Draine possessed on November 5, 2021 was owned by the car's owner, not Mr. Draine.

Case 7:22-cr-00428-CS   Document 43   Filed 06/22/23   Page 4 of 8

The Honorable Cathy Seibel                                    Page **4** of **8**
United States v. Gregory Draine (22 Cr. 428)      Sentencing Submission (June 22, 2023)

possession was momentary – he only possessed the gun for a matter of minutes. Under these circumstances, and especially because Mr. Draine did not intend to injure, a lengthy prison sentence is not necessary.[5]

    A.    <u>The Nature and Circumstances of Mr. Draine's Conduct Do Not Compel a Sentence Beyond Forty-Eight Months.</u>

As detailed in the PSR, Mr. Draine got into a verbal altercation with someone in Yonkers while he was using a friend's automobile. That friend kept a gun in the car's trunk. During this argument, Mr. Draine, apparently aware that there was a firearm in the trunk, retrieved the weapon and recklessly fired it in the air, hitting the porch of a nearby house.[6] This was clearly unlawful, but it does not necessitate a sentence beyond forty-eight months because the possession was fleeting. Mr. Draine did not seek out and purchase a gun so that he could use the gun as part of a criminal enterprise and he did not possess the weapon for more than a few minutes, nor did he intend to hurt anyone with the gun. For these reasons, a sentence of forty-eight-months is more than sufficient.

    B.    <u>Mr. Draine's History and Characteristics Warrant Leniency</u>

While Mr. Draine has a significant criminal record, his prior convictions all occurred when he was in his late teens and very early twenties. He was convicted of robbery-related offenses in 1999 and then spent the next eighteen or so years in prison in Virginia. PSR ¶ 43-45. While he was originally supposed to be supervised through parole, that component of his sentence was cancelled in January 2020. *See* Exhibit B, January 31, 2020 Letter from Department of Corrections Community

---

[5] Additionally, leniency is warranted because Mr. Draine is in primary state custody. As such, Mr. Draine has not earned any credit towards his federal sentence. *See* U.S.C. § 3585.

[6] As agreed upon pursuant to the plea agreement, and as found by Probation, Mr. Draine – by firing the weapon on a street – recklessly endangered the public, which triggers a sentencing enhancement pursuant to USSG § 2K2.1(b)(6)(B). PSR ¶ 26.

Case 7:22-cr-00428-CS   Document 43   Filed 06/22/23   Page 5 of 8

The Honorable Cathy Seibel                                          Page **5** of **8**
United States v. Gregory Draine (22 Cr. 428)          Sentencing Submission (June 22, 2023)

Corrections Adult Probation and Parole, District 23.  Thus, after serving nearly twenty years in custody, Mr. Draine was released without much help or support.  In this light, it is not surprising that Mr. Draine's reentry did not go as planned.  Nevertheless, a sentence of forty-eight months is more than sufficient because, as Your Honor is well aware, after Mr. Draine finishes serving his incarceratory sentence he will be subjected to a term of post-release supervision through federal probation, which will ensure that Mr. Draine gets the help and support that he needs.  This sentiment is echoed by Mr. Draine's sister, Brenda Draine Delaney, who stressed that Mr. Draine "is not a bad person" but instead "needs help in getting his anger and emotions out and under control."  Exhibit C, Brenda Draine Delaney Letter.

Additionally, a reduced sentence is appropriate because Mr. Draine's past is sympathetic.  As a child, Mr. Draine grew up in a gang infested neighborhood in Yonkers, New York.  *Id.* ¶ 61.  He witnessed violence in his childhood home and was raised by his father, who was always at work.  Exhibit A, Tina Draine Letter, PSR ¶ 62. Mr. Draine started using alcohol and marijuana at a very young age and dropped out of school in the tenth grade.  PSR ¶¶ 74-75, 77..  Exhibit A, Tina Draine Letter.  Despite this, Mr. Draine is a caring man who strives to help others.  His mother describes him as a "loving" and "kind" man with a "big heart."  Exhibit A, Tina Draine Letter.  She explains that Mr. Driaine, "always made sure that I had food to eat, that I went to my appointments, had my medicine, and that I was okay," and she describes how when Mr. Draine's niece was acting out, Mr. Driane "reached out to her to talk to her about it and encourage her. . . . Gregory wanted her to know that he was there for her and that he loves her."  *Id.*  Tariq Draine, Mr. Draine's nephew, agrees that family is important to Mr. Draine.  He explains, "I learned from Uncle Greg a lot about the importance of family and the role they play in our hard times, even if it has to be a consequential learning lesson."  Exhibit D, Tariq Draine Letter.  Mr. Draine's relationship with his family is mitigating and justifies a variance.

The Honorable Cathy Seibel											Page **6** of **8**
United States v. Gregory Draine (22 Cr. 428)			Sentencing Submission (June 22, 2023)

C.   The Remaining Sentencing Factors Justify Leniency

Mr. Draine has been specifically deterred. He has been in custody since November, 2021 and faces the prospect of a significant period of incarceration for both this case and his unresolved state-court matters. Mr. Draine will be forty-six in July, and if he receives a forty-six month sentence he will be well into his 50s when he is released.[7] This lowers Mr. Draine's recidivism risk considerably because recidivism rates drop dramatically as defendants enter their fifties and sixties.

*Data from the Sentencing Commission*[8]



Regarding general deterrence, a sentence of forty-six months will provide ample deterrence. The fact that Mr. Draine was arrested, charged, separated from his family, detained and sentenced to four years in prison provides ample

---

[7] As noted by Probation, Mr. Draine has been in primary state jurisdiction, PSR P. 1, which means that he has not yet begun receiving credit for his incarceration in this case. *See* 18 U.S.C. § 3585.

[8] This screenshot is from a United States Sentencing Commission Report titled *Report at a Glance: Recidivism and Federal Sentencing Policy*. A copy of this report is attached as Exhibit E.

Case 7:22-cr-00428-CS   Document 43   Filed 06/22/23   Page 7 of 8

The Honorable Cathy Seibel                                             Page **7** of **8**
United States v. Gregory Draine (22 Cr. 428)            Sentencing Submission (June 22, 2023)

deterrence; a lengthy further term of incarceration is not required.[9] Moreover, while the requested sentence is roughly one-year lower than the average sentence for similarly situated defendants, *see* PSR P. 22, Mr. Draine will receive *no* credit for his previous nineteen months of incarceration because he has been in primary state jurisdiction. Thus, a forty-eight month sentence would actually result in Mr. Draine serving *more* time than similarly situated defendants. Because of this, Mr. Draine is worthy of a variance and the Court should run his federal sentence concurrent with any anticipated state-court sentences. *See* U.S.S.G. § 5G1.3(d).

    D.    <u>Harsh Conditions</u>

Mr. Draine has been incarcerated at the Westchester County Jail since November 22, 2021. As this Court is well aware, COVID-19 has severely impacted day to day operations at the Westchester County Jail. COVID-19 related restrictions have caused Mr. Draine to face repeated periods of isolation and quarantine, as well as significantly restricted visitation and dramatically reduced jail programing. While the defense is not asking for a departure due to jail conditions, *see United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001), the COVID-19 pandemic is relevant under the applicable 3553(a) factors. Judges within this district have considered the impact of the pandemic on incarceration and have repeatedly lowered sentences accordingly. *See, United States v. De Jesus*, 20 Cr. 19 (S.D.N.Y. July 1, 2020) (sentencing defendant to time-served plus one day despite a guidelines recommendation of 30-37 months in part because of the COVID-19 related conditions at MCC); *United States v. Morgan*, 19 Cr. 209 (S.D.N.Y. May 5, 2020) (cutting the sentence to less than half of the low end of the Guidelines based in part on conditions at MDC); *United States v. Casillas*, 19 Cr. 863 (S.D.N.Y. May

---

[9] Additionally, "general deterrence" alone cannot justify an unnecessarily harsh or draconian sentence. See *United States v. Corsey*, 723 F.3d 366, 381 (2d Cir. 2013) (Underhill, J., concurring) (where the district court's § 3553 analysis relied "almost exclusively on one word – 'deterrence,'" that factor simply could not "'bear the weight assigned it under the totality of circumstances in the case.'" (quoting United States v. Cavera, 550 F.3d 180, 191 (2d Cir. 2008)).

Case 7:22-cr-00428-CS   Document 43   Filed 06/22/23   Page 8 of 8

The Honorable Cathy Seibel                                          Page **8** of **8**
United States v. Gregory Draine (22 Cr. 428)            Sentencing Submission (June 22, 2023)

4, 2020) (reducing the length of the sentence in part because of conditions at MCC during COVID019 crisis): *United States v. Pierson*, 14 Cr. 855 (S.D.N.Y. May 4, 2020) (same for defendant at MDC).

Mr. Draine is worthy of such a variance. Ordinarily, solitary confinement and isolation and the loss of privileges is reserved for individuals who commit infractions, but here Mr. Draine faced similarly harsh conditions for the majority of his incarceration. This merits a variance.

\* \* \*

There is nothing to be gained by a draconian sentence in this, especially in light of Mr. Draine's sympathetic past and his acceptance of responsibility. For the reasons set forth above, I respectfully ask that the Court to impose a sentence of forty-eight months of incarceration.

Thank you for your consideration of this request.

Respectfully,

//s

Benjamin Gold
Assistant Federal Defender

cc:   Assistant U.S. Attorney Qais Ghafary
      Assistant U.S. Attorney Kingdar Prussien